UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY JONES,

                    Petitioner,              Case No. 2:13-cv-13885
                                             Hon. Gershwin A. Drain

v.

S.L. BURT[1],

                    Respondent.
_____/

## OPINION AND ORDER (1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS [#16], (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

### I. INTRODUCTION

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254.

Troy Jones, ("Petitioner"), was convicted after a jury trial in the Allegan Circuit

Court of assault with intent to do great bodily harm, MICH. COMP. LAWS § 750.84,

and witness tampering. MICH. COMP. LAWS § 750.122(7)(b). Petitioner was

sentenced as a fourth-time habitual felony offender to consecutive terms of 10 to 20

---

[1] Petitioner has been transferred to the Muskegon Correctional Facility. The proper Respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Warden S.L. Burt in the caption.

years for the assault conviction and 28 months to 6 years for the witness tampering conviction.

The amended petition asserts three grounds for relief: (1) Petitioner's right to counsel was violated when jail authorities intercepted, copied, and disbursed to the prosecutor legal mail sent to and received by Petitioner in jail, (2) Petitioner's trial testimony was erroneously impeached with the use of prior convictions obtained when Petitioner was not represented by counsel, and (3) Petitioner was denied the effective assistance of counsel when his counsel failed to challenge the prosecutor's use of the prior uncounseled convictions. Dkt. No. 20.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to appeal in forma pauperis.

## II. BACKGROUND

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted of assaulting Tanya Rogers during the early morning hours of October 11, 2008, at defendant's house. Defendant was acquitted of a separate assault charge involving his sister, Debra Jones. The witness tampering conviction arose from defendant's offer to pay Rogers $1,000 for either refusing to testify or for testifying in a specified manner.

*People v. Jones*, No. 292793 & 292794, 2011 WL 4467686, at *1 (Mich. Ct. App. Sept. 27, 2011).

The procedural history of the case is lengthy and convoluted. Petitioner first filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal filed by appointed appellate counsel raised three claims: (1) Petitioner's right to counsel was violated when jail authorities intercepted, copied, and disbursed to the prosecutor legal mail sent from him from jail, (2) Petitioner was denied the effective assistance of counsel, and (3) the sentencing guidelines were scored incorrectly. Petitioner also filed a supplemental pro se brief that raised six additional claims: (4) Petitioner's trial testimony was erroneously impeached with the use of prior convictions obtained when Petitioner was not represented by counsel, (5) the trial court erred in failing to adjourn trial and order Petitioner to undergo a forensic examination, (6) Petitioner was denied the effective assistance of counsel, (7) Petitioner was charged under the wrong statute, (8) the prosecutor and trial court erroneously amended the statutory language to fit the facts of the offense, and (9) the sentencing guidelines were incorrectly scored.

The Michigan Court of Appeals affirmed Petitioner's convictions, but it remanded the case to the trial court for resentencing. *Jones*, 2011 WL 4467686.

While Petitioner was awaiting resentencing in the trial court, he filed an application for leave to appeal in the Michigan Supreme Court raising the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application by form order. *People v. Jones*, 801 N.W.2d 583 (Mich. 2012).

The trial court resentenced Petitioner on November 26, 2012. Petitioner filed a claim of appeal from his new sentence, raising claims challenging his sentence as well as new claims challenging his conviction.

Meanwhile, Petitioner filed the present case on September 11, 2013, raising the three claims eventually raised in his amended petition. Dkt. No. 1. On December 26, 2013, Respondent filed an answer, arguing in part that the petition was filed prematurely as Petitioner was still pursuing appellate relief in the state courts. Dkt. No. 8. In response, Petitioner filed a motion to stay his habeas case while he completed state court review on February 13, 2014. Dkt. No. 11. The Court granted the motion on April 22, 2014, and ordered that the case be stayed and held in abeyance while Petitioner completed state appellate review. Dkt. No. 14.

On July 31, 2012, Petitioner filed a pro se motion for relief from judgment in the trial court and several supplemental pleadings, apparently re-raising what now form his three habeas claims. Dkt. Nos. 24-2 through 24-6. The trial court denied the

motions and supplemental pleadings in orders dated December 1, 2014, and February 18, 2015. Dkt. 24-7, 24-8.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, appealing the denial of his motion for relief from judgment. On August 20, 2015, the Michigan Court of Appeals denied the application with citation to Michigan Court Rule 6.508(D). *People v. Jones*, No. 327288 (Mich. Ct. App. Aug. 20, 2015). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, but it was also denied under Rule 6.508(D). *People v. Jones*, 876 N.W.2d 884 (Mich. 2016).

Meanwhile, the Michigan Court of Appeals had affirmed Petitioner's appeal from his resentencing while his motion for relief from judgment was still pending. *People v. Jones*, Mich. Ct. App. No. 315582 & 315713, 2014 WL 4723595, at *1 (Mich. Ct. App. Sept. 23, 2014). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, and the court remanded the case back to the trial court for a second resentencing. *People v. Jones*, 876 N.W.2d 532 (Mich. 2016). Petitioner was resentenced on June 20, 2016. Dkt. No. 30-18.

On April 18, 2016, Petitioner moved to reopen this case, and he filed an amended petition for writ of habeas corpus that raised the same three claims he raised in his initial petition. Dkt. Nos. 18, 20. On May 2, 2016, the Court ordered the case

to be reopened. Dkt. No. 21. On August 1, 2016, Respondent filed the relevant part of the state court record. Dkt. Nos. 24, 30. On August 26, 2016 Petitioner filed a Motion to Extend the Filing Deadline to file his reply brief, with his reply brief attached. Dkt. No. 25. The Court granted Petitioner's Motion to Extend on September 12, 2016. Dkt. No. 26. The matter is now ready for review.

### III. STANDARD OF REVIEW

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal

principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

## IV. ANALYSIS

A. Procedural Default

Respondent contends that review of Petitioner's claims is procedurally barred because Petitioner did not properly present them on the same grounds on direct appeal as he does here, and because the state courts found the new arguments barred

on state collateral review. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Here, as outlined above, the protracted procedural history makes any determination of whether Petitioner's claims are procedurally barred for the reasons stated by Respondent murky. The analysis would require the Court to decipher exactly which of Petitioner's multiple pro se pleadings first fairly asserted his federal constitutional claims—and there is plenty room for debate about that given the lengthy multiple pro se pleadings filed by Petitioner in the state courts throughout

his various appeals. However, this analysis is unnecessary because Petitioner presents three substantive claims that are devoid of merit.

B. Petitioner's Jailhouse Letters

Petitioner's first claim asserts that his Sixth Amendment right to counsel was violated by the prosecution's direction to jail personnel to intercept, copy, and distribute letters sent to and received by Petitioner while he was housed in jail, which including correspondences to and from his trial counsel. Dkt. No. 1, pg. 4 9Pg. ID 4).

Under clearly established Supreme Court law, the Sixth Amendment guarantees defendants access to a fair adversarial criminal process. *U.S. v. Cronic*, 466 U.S. 648, 656 (1984). "Where the Sixth Amendment is violated, a serious risk of injustice infects the trial itself." *Chittick v. Lafler*, 514 F. App'x 614, 617 (6th Cir. 2013) (internal quotation marks omitted). "[I]n order to establish a violation of the Sixth Amendment right to counsel ensuing from government surveillance, a claimant must not only show that conversations with an attorney were surreptitiously monitored, but must also show that the information gained was used to prejudice the claimant's defense in his criminal trial." *Sinclair v. Schriber*, 916 F.2d 1109, 1112 (6th Cir. 1990). In the related context of the government's use of police informants, the Supreme Court and the Sixth Circuit have identified a number of factors to

consider in determining whether a defendant's Sixth Amendment rights have been violated by an "invasion of the attorney-client privilege," including:

> 1) whether the presence of [an] informant was purposely caused by the government in order to garner confidential, privileged information, or whether the presence of [an] informant was the result of other inadvertent occurrences; 2) whether the government obtained, directly or indirectly, any evidence which was used at trial as the result of the informant's intrusion; 3) whether any information gained by the informant's intrusion was used in any other manner to the substantial detriment of the defendant; and 4) whether the details about trial preparations were learned by the government.

*U.S. v. Steele*, 727 F.2d 580, 585 (6th Cir. 1984) (citing *Weatherford v. Bursey*, 429 U.S. 545, 554 (1977)).

Here, the Michigan Court of Appeals found that Petitioner's Sixth Amendment rights were not violated by the interception of Petitioner's jailhouse correspondence:

> Under the United States and Michigan Constitutions, a defendant in a criminal prosecution is entitled to counsel. U.S. Const, Ams. VI and XIV; Const. 1963, Art 1, § 20. A defendant's right to counsel under the state constitution is generally the same as that guaranteed by the United States Constitution. *People v. Reichenbach*, 459 Mich. 109, 118 (1998).
>
> \* \* \*
>
> As observed in *People v. Waclawski*, 286 Mich. App. 634, 693–694 (2009), quoting *Ravary v. Reed*, 163 Mich. App. 447, 453 (1987):
>
> > The attorney-client privilege attaches to communications made by a client to his or her attorney acting as a legal adviser and made for the purpose of obtaining legal advice

on some right or obligation. *Alderman v. The People*, 4 Mich. 414, 422 (1857); *Kubiak v. Hurr*, 143 Mich. App. 465, 472-473 (1985). The purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed. *Id*., 473. The privilege is personal to the client, who alone can waive it. *Passmore v. Passmore's Estate*, 50 Mich. 626, 627 (1883).

The attorney-client privilege includes both the security against publication and the right to control the introduction into evidence of such information or knowledge communicated to or possessed by the attorney. *Leibel*, 250 Mich. App. at 240.

However, the protection is not absolute. "Once otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears." *Oakland Co Prosecutor v. Dep't of Corrections*, 222 Mich. App. 654, 658 (1997). For instance, in *People v. Compeau*, 244 Mich. App. 595, 597-598 (2001), the Court held that a communication was not privileged where the defendant failed to take reasonable precautions to keep his conversation between himself and his attorney confidential.

We conclude that the trial court properly ruled that some of defendant's mail, which contained copies of defendant's letters to his attorney, was not privileged. The letters were each contained in an envelope sent to defendant from his father, a third party. It is unknown how defendant's father came to possess copies of the letters that defendant wrote to defense counsel, but his possession was purposeful. Defendant's father mailed the copied letters to defendant at defendant's request. Because defendant allowed the letters to be shared with his father, the communications lost their privileged status. *Leibel*, 250 Mich. App. at 240 (valid waiver requires intentional, voluntary act); *Compeau*, 244 Mich. App. at 597–598. Therefore, defendant's Sixth Amendment right to counsel was not affected.

\* \* \*

However, two of the letters were clearly privileged legal mail. One was an incoming letter to defendant from defense counsel, in an envelope clearly marked as such. The other was an outgoing multi-page letter also in an envelope clearly marked to defense counsel. Therefore, the opening of this mail was an impermissible intrusion. The critical question is whether the trial court properly required defendant to show that he was prejudiced by these intrusions.

In *People v. Iaconnelli* (On Rehearing), 116 Mich. App. 176, 177 (1982), this Court reversed its previous decision granting the defendant a new trial on the ground that his Sixth Amendment right to counsel was impermissibly invaded. This Court found no prejudice to the defendant where there was a lack of evidence showing that any trial strategy was communicated to the prosecution. *Id*. The prosecution had questioned a codefendant, who previously had the same attorney as the defendant, regarding defense strategies before he became a prosecution witness. *People v. Iaconnelli*, 112 Mich. App. 725, 737 (1982).

Therefore, we conclude that Michigan courts favor requiring a finding of prejudice before an intentional governmental intrusion will be determined to be a Sixth Amendment violation. The existing record demonstrates that the trial court did not clearly err in its factual finding that the prosecutor did not use any information to defendant's disadvantage, i.e., that defendant suffered no prejudice. See *Dendel*, 481 Mich. at 114. Accordingly, the trial court did not abuse its discretion in its ultimate decision to deny defendant's motion for new trial. See *Miller*, 482 Mich. at 544.

*Jones*, No. 292793 & 292794, 2011 WL 4467686, at *3-4.

This decision amounted to a reasonable application of clearly established Supreme Court law.

First, the state court's determination that Petitioner waived his privilege with respect to the one letter from his counsel that he sent to his father that was mailed back to him in jail is a matter of state law that does not give rise to a cognizable claim. "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985); see also, *Dye v. Hofbauer*, 197 F. App'x 378, 383 (6th Cir. 2006) ("The attorney-client privilege is a creation of the common law, and a violation of this privilege generally does not constitute" a constitutional violation.).

Next, the state court's determination that Petitioner's Sixth Amendment rights were not violated with respect to the interception of the other letters is reasonably supported by the trial record. The record shows that on October 28, 2008, while Petitioner was in jail awaiting his preliminary examination, Petitioner wrote a letter to Henry Pelc, offering him money to go to the victim of the assault charge and ask her not to testify at the preliminary examination in exchange for $1,000. There was no dispute that Petitioner wrote the letter. Tr. 5-4-09, at 2-3 (Petitioner's stipulation), 112-13 (victim's testimony); Tr. 5-5-09, at 105-120 (Pelc's testimony); Tr. 5-6-09, at 49 (Petitioner's testimony). Pelc followed through and delivered the offer to the victim, who in turn notified police. Tr. 5-4-09, at 112-146. As a result of Petitioner's actions of trying bribe the victim from jail, the prosecutor ordered that Petitioner's

mail be intercepted, copied, and forwarded. Tr. 4-22-09, at 2-14; Tr. 4-27-09, at 2-24, 35-41; Tr 5-6-09, at 143-147.

On April 22, 2009, the matter came to a head when Petitioner's attorney moved to withdraw as counsel and sought to disqualify the prosecutor on the grounds that privileged communications were intercepted, impeding counsel's ability to defend Petitioner. Counsel complained that the prosecutor had obtained through this procedure letters that were sent between him and his client concerning trial strategy. Tr. 4-27-09, at 2-7. The trial court held a hearing, and the parties marked as exhibits eight of the intercepted letters which Petitioner's counsel claimed included privileged communications. *Id.*, at 5-6, 10.

Other than one letter which was inadvertently read, the prosecutor stated that he did not read any of the letters between counsel and his client. Tr. 4-27-09, at 3-4. The prosecutor stated: "I didn't read anything, and I do want to clarify as I giving [sic] the Court the one piece I did see that I said Mr. Champion [Petitioner's counsel] we don't need a handwriting expert." *Id.* at 14-15. The prosecutor stated that he did not read any of the other letters addressed to Petitioner's counsel and no one had summarized the letters for him. *Id.* at 15.

At the close of the hearing, the trial court found that Petitioner waived any privilege of legal correspondence contained in the one letter received from a civilian

(his father) that contained a letter to his counsel. *Id.* at 21. The court, accepting the prosecutor's representations that he did not read the contents of the other opened letters, found that the mere opening of mail did not inhibit Petitioner's right to defend himself. *Id.* at 20-24.

Following his conviction Petitioner again raised the issue in a motion for new trial. Tr. 6-17-09, at 2-3. After the prosecutor again denied reading any of the privileged communications other than inadvertently reading the one regarding the handwriting expert, the trial court ruled:

> The evidence in this case involving a witness bribery against Mr. Jones arises from a piece of correspondence he sent while a prisoner out of jail to an intermediary; asking the intermediary to communicate that letter that contained a bribe, and that more than anything else demonstrates the sound rationale for examining prisoners outgoing correspondence to non-privileged sources.
>
> Now, there is a record made during the trial of a letter to Mr. Champion [defense counsel] sent I believe through and to a third party with a phony identity attached to that letter by the defendant. My ruling at the time, my ruling now is that as to that communication the defendant waived his expectation of privacy by sending that apparently confidential communication out through a non-confidential source. It would be the equivalent of bringing a non-lawyer in on a conversation between a lawyer and a client that would otherwise be confidential. That's my ruling and so that particular piece of legal mail is denied as grounds for granting the defendant a new trial.
>
> As to the separate piece of mail that the prosecutor's office saw, I think that was opened inadvertently and I think Mr. Kengis [the prosecutor] identified the subject of Mr. Champion on the letter, and

didn't read it further, returned it to Mr. Champion. As far as this Court knows didn't employ any of the content of that letter in the trial and the content of that letter remains a mystery to the Court. So, there are no adverse consequences inured to the defendant from the fact that the letter was inadvertently opened. Also on that ground, and all others raised by the defendant with respect to the mail issue, I see no impact on his trial in terms of corrupting it with information invaded by the prosecutor improperly and used against him in the trial.

Tr. 6-17-09, at 6-7.

In light of this record, which includes presumptively correct factual findings made by the trial court (see 28 U.S.C. § 2254(e)(1)), the decision by the Michigan Court of Appeals did not involve an objectively unreasonable application of clearly established Supreme Court law. First, the interception of Petitioner's mail was not purposely caused by the government in order to garner confidential, privileged information. It was done because Petitioner had attempted to bribe the victim of the assault. The government had a legitimate interest in taking measures to ensure the continued integrity of the assault prosecution. The letters were being screened not to gain information about Petitioner's defense, but to make sure that Petitioner was not attempting to bride or otherwise improperly influence witnesses. The one confidential letter concerning the lack of a need for a handwriting expert was inadvertently read by the prosecutor. This did not result in the prosecutor obtaining any evidence or other useful information which was used at trial. The fact that

Petitioner believed no handwriting expert was necessary did not result in any advantage to the prosecutor because Petitioner admitted at trial that he wrote the letter attempting to bribe the victim. The state court's determination that Petitioner's defense suffered no prejudice from the interception of his mail was reasonable. Accordingly, Petitioner has failed to demonstrate entitlement to habeas relief with respect to this claim.

## C. Impeachment with Prior Convictions

Petitioner's second claim asserts that the trial court erred in allowing the prosecutor to impeach his credibility at trial with prior uncounseled misdemeanor retail fraud convictions. Petitioner asserts that he was never waived his right to counsel in the prior proceedings.

Generally speaking, under clearly established Supreme Court law, a prior uncounseled conviction cannot be "used against a person either to support guilt or enhance punishment for another offense." *Burgett v. Texas*, 389 U.S. 109, 115 (1967). But that principle is inapplicable where the defendant intelligently and knowingly waived his right to counsel in the prior criminal proceedings. *Nichols v. United States*, 511 U.S. 738, 743 n.9 (1994).

Here, the Michigan Court of Appeals rejected Petitioner's claim on the grounds that the state record showed that Petitioner had waived his right to counsel with respect to the prior convictions:

> [D]efendant argues that his constitutional rights were violated when he was impeached with invalid retail fraud convictions and that defense counsel was ineffective for failing to investigate defendant's claim that he was not represented by counsel and was only convicted of one count of retail fraud. We disagree.
>
> \*    \*    \*
>
> On appeal, defendant now contends that the convictions were obtained in violation of his right to counsel. He attaches to his Standard 4 brief numerous documents relating to these convictions in support of his position.
>
> \*    \*    \*
>
> The documents indicate that defendant pleaded guilty to three counts of retail fraud after waiving his right to counsel. Defendant's annotations on the various documents mirror his sentiments in his motion to withdraw his guilty plea and accompanying affidavit regarding a desire for counsel and not knowingly waiving his right to counsel. However, there is nothing objective in the materials to suggest that defendant was denied his right to counsel or that his waiver was not valid.

*Jones*, 2011 WL 4467686, at *11-12.

The decision of the Michigan Court of Appeals was reasonable. The record reasonably supports the state court's determination that Petitioner voluntarily waived his right to counsel with respect to his prior retail fraud convictions. The judgment of sentence states: "Defendant was advised of right to counsel and appointed counsel and knowingly, intelligently, and voluntarily waived that right." Dkt. 9-3, pg. 430 (Page ID 869). The transcript of the guilty plea refers to Petitioner having read and signed an advice of rights form, and that by pleading guilty, he was waiving those rights. Dkt. 9-3, pg. 431 (Page ID 870). As indicated above, factual findings made by a state court are presumed to be correct unless rebutted by clear and convincing evidence. § 2254(e)(1). The determination that the state court record showed that Petitioner validly waived his right to counsel before pleading guilty finds support in the record of the misdemeanor plea, and Petitioner has not proffered clear and convincing evidence to the contrary. The claim is therefore without merit.

D. Effective Assistance of Counsel

Petitioner's third claim asserts that he was denied the effective assistance of trial counsel when his trial attorney failed to object to the use of the prior uncounseled convictions. The Court has already determined that Petitioner was properly impeached by the prior convictions because he validly waived his right to counsel. Counsel cannot be deemed ineffective for failing to raise a meritless

objection. *See Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006). Petitioner's third claim is therefore without merit.

## V. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of his claims. The Court will therefore deny a certificate of appealability with respect all of Petitioner's claims. Furthermore, if Petitioner chooses to appeal the Court's decision, he may not proceed in forma pauperis because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## VI. CONCLUSION

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated:  April 30, 2018                    /s/Gershwin A. Drain
                                          GERSHWIN A. DRAIN
                                          United States District Judge